Steven J. Nataupsky (SBN 155,913)
steven.nataupsky@knobbe.com
Paul A. Stewart (SBN 153,467)
paul.stewart@knobbe.com
Sheila N. Swaroop (SBN 203,476)
sheila.swaroop@knobbe.com
Marko R. Zoretic (SBN 233,952)
marko.zoretic@knobbe.com
Nicole R. Townes (SBN 272,342)
nicole.townes@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA  92614
Telephone:  949-760-0404
Facsimile:  949-760-9502

Attorneys for Plaintiff,
MOPHIE, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MOPHIE, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>DHARMESH SHAH A.K.A. DAVID SHAH D/B/A SOURCE VISTA, an individual; LIVINGSOCIAL, INC., a Delaware corporation; and SERVE GLOBAL, LLC,  a Texas limited liability company D/B/A SOURCEVISTA.COM,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No.:<br>SACV 13-01321 DMG (JEMx)<br><br>**MOPHIE, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR RECONSIDERATION**<br><br>Date:<br>Time:       9:30 a.m.<br>Ctrm.:       7-2nd Floor<br><br>Hon. Dolly M. Gee |

# TABLE OF CONTENTS

Page No.

I. INTRODUCTION .................................................................................... 1

II. FACTUAL BACKGROUND ................................................................... 3

    A. October 24 Hearing & Tentative Ruling ....................................... 3

    B. The Court's Summary Judgment Order ......................................... 3

    C. Recent Notice of Allowance of '351 Application .......................... 4

III. LEGAL STANDARDS ............................................................................ 5

    A. Reconsideration .............................................................................. 5

    B. Indefiniteness ................................................................................. 6

IV. ARGUMENT ............................................................................................ 7

    A. The PTO Recently Allowed The Claims Of The '351 Application, Thereby Finding The Claims To Be Definite ........................................................................................... 7

    B. The Court Clearly Erred And Failed To Consider Critical Facts In Its Analysis Of The Definiteness Issue ................... 8

        1. The Prosecution History Of A Patent Or A Related Application Cannot Render The Claims Of The Patent Indefinite ........................................................... 8

        2. The Specification Of The '235 Patent Should Be Considered In Deciding Whether The Claims Are Sufficiently Definite ................................................................ 10

        3. The Prosecution History Of The '235 Patent Should Be Considered In Deciding Whether The Claims Are Sufficiently Definite ............................................ 12

        4. The Opinions Of Defendants' Own Expert Should Be Considered ............................................................ 13

    C. The Court's Order Concluding That The Dictionary Definitions Are Ambiguous As To The Ordinary and Customary Meaning of "Back Plane" (Two Words) Is Also Clearly Erroneous ................................................................ 14

V. CONCLUSION ....................................................................................... 14

# TABLE OF AUTHORITIES

Page No(s).

*Athletic Alternatives v. Prince Mfg.*,
    73 F.3d 1573 (Fed. Cir. 1996) .................................................................................. 9

*Chimie v. PPG Indus.*,
    402 F.3d 1371 (Fed. Cir. 2005) ................................................................................ 9

*City of Los Angeles v. Santa Monica Baykeeper*,
    254 F.3d 882 (9th Cir. 2001) .................................................................................... 5

*Ecolab, Inc. v. FMC Corp.*,
    569 F.3d 1335 (Fed. Cir. 2009) ................................................................................ 9

*Exxon Research & Eng'g Co. v. United States*,
    265 F.3d 1371 (Fed. Cir. 2001) ................................................................................ 6

*Golight, Inc. v. Wal-Mart Stores, Inc.*,
    355 F.3d 1327 (Fed. Cir. 2004) .............................................................................. 10

*Halliburton Energy Servs., Inc. v. M-I LLC*,
    514 F.3d 1244 (Fed. Cir. 2008) ................................................................................ 6

*Honeywell Int'l., Inc. v. Universal Avionics Systems Corp.*,
    493 F.3d 1358 (Fed. Cir. 2007) .............................................................................. 10

*Melancon v. Texaco, Inc.*,
    659 F.2d 551 (5th Cir. 1981) .................................................................................... 5

*Metabolite Labs v. Lab. Corp. of Am. Holdings*,
    370 F.3d 1354 (Fed. Cir. 2004) ................................................................................ 8

*Microsoft Corp. v. i4i Ltd. P'ship*,
    131 S. Ct. 2238 (2011) .............................................................................................. 6

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    134 S. Ct. 2120 (2014) .............................................................................................. 6

*Network Signatures, Inc. v. ABN-AMRO, Inc.*,
    No. SACV 06-629, 2007 U.S. Dist. LEXIS 48332
    (C.D. Cal. Apr. 10, 2007) .......................................................................................... 5

## TABLE OF AUTHORITIES
### (continued)

Page No(s).

*Philips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) .............................................................. 8, 9

*Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*,
    5 F.3d 1255 (9th Cir. 1993) ........................................................................ 5

*Tech. Licensing Corp. v. Videotek, Inc.*,
    545 F.3d 1316 (Fed. Cir. 2008) .................................................................. 6

*Transocean Offshore Deepwater Drilling v. Stena Drilling*,
    No. H-08-3287, 2014 U.S. Dist. LEXIS 152196
    (S.D. Tex. Oct. 27, 2014) ........................................................................... 6

*Vitronics Corp. v. Conceptronic*,
    90 F.3d 1576 (Fed. Cir. 1996) .............................................................. 8, 11

### OTHER AUTHORITIES

35 U.S.C. § 112 ................................................................................................... 6

37 C.F.R. § 1.311 ................................................................................................ 7

mophie, Inc. ("mophie") submits this Memorandum of Points and Authorities in Support of its Motion for Reconsideration of the Court's Summary Judgment Order (Dkt. No. 306). In particular, mophie seeks reconsideration of the Court's Order finding the asserted claims of the '235 Patent invalid for indefiniteness under 35 U.S.C. § 112 due to the presence of the term "back plane." (Dkt. No. 306 at 45–50.)

## I. INTRODUCTION

This Court ruled on summary judgment that the asserted claims of the '235 Patent are invalid for indefiniteness under 35 U.S.C. § 112. The sole basis for this Court's ruling was mophie's submission of two distinct definitions of the claim term "back plane" to the PTO during prosecution of a different patent application, the '351 application. The Court reasoned that a person skilled in the art, reviewing the prosecution history of the '351 application, would not know which of the two definitions of "back plane" to choose. Therefore, the Court concluded, the claims of the '235 Patent, which recite a "back plane," did not reasonably apprise the public of their scope.

mophie respectfully seeks reconsideration for two reasons. First, after the briefing and hearing on the summary judgment motions, the PTO allowed the claims of the '351 application. Thus, the PTO has concluded that the claims of the '351 application, which include the term "back plane," satisfy all of the requirements for patentability, including the definiteness requirement. In short, the related patent application which caused this Court concern has been deemed definite by the PTO. The '235 Patent should be treated no differently. Moreover, it is noteworthy that two different Examiners—the '235 Patent Examiner and the '351 application Examiner—have both now concluded that the term "back plane" is definite.

Second, mophie respectfully submits that the Court clearly erred as a matter of law. In particular, the Court erred in concluding that an ambiguity in

the prosecution history alone can **create** indefiniteness in a patent claim. Patent claims are construed primarily in view of the specification, which the Federal Circuit has repeatedly held is the single best guide for construing the claims. The prosecution history is relevant, but only to assess whether the history as a whole shows that the patentee clearly disclaimed a particular construction. Here, the specification unequivocally shows that mophie intended the mechanical meaning of "back plane"—a back, planar surface. Even the Defendants' expert agreed. The prosecution history as a whole contains no clear disclaimer of this meaning. That should have been the end of the matter, and the claims of the '235 Patent should have been construed to incorporate the ordinary mechanical meaning of "back plane."

The Court was, of course, correct that the prosecution history of the related '351 application does contain an ambiguity. But prosecution history, like legislative history, is a notoriously ambiguous interpretive tool. That is why it is relied upon only for clear disclaimers, and not as the primary resource for construing the claims. Ambiguity in the prosecution history cannot trump clear claim language or a clear specification, any more than an ambiguous legislative history can trump clear statutory language.

mophie respectfully submits that the Court also clearly erred in its analysis in a second way. The Court considered **only** the ordinary meanings of "back plane" and "backplane," and the prosecution history of the '351 application. In its written analysis, the Court never considered the specification of the '235 Patent—the primary claim construction tool—or the prosecution history of the '235 Patent itself. This led the Court to disregard the fact that every single example of the invention in the specification includes a mechanical back plane, not an electrical backplane. It also led the Court to disregard the fact that the Examiner of the '235 Patent clearly understood the patent claims to refer to a mechanical back plane, not an electrical backplane.

-2-

The Court instead treated the issue before it as if a person skilled in the art would have been faced with the stark choice of deciding between two declarations, with no further guidance. That, however, is a false choice. Instead, a person skilled in the art would have been faced with claim language, a specification, and a prosecution history which all pointed unambiguously to a mechanical back plane, and a prosecution history in a related application that contained ambiguity. Faced with **that** choice, a person skilled in the art, following precedent, would have chosen the clear claim language, specification and prosecution history of the '235 Patent over the ambiguity of the prosecution history of the '351 application.

## II. FACTUAL BACKGROUND

### A. October 24 Hearing & Tentative Ruling

On October 24, 2014, the Court held a hearing on the parties' respective summary judgment motions. (Dkt. No. 295.) With respect to mophie's patent infringement allegations, the Court provided an oral tentative ruling as follows:

> I am inclined to grant Mophie's motion for summary judgment as to patent infringement by the Source Vista defendants and deny the Source Vista defendants' motion for summary judgment as to patent infringement.

(Dkt. No. 311 at 4:13-16.) Regarding the construction of "back plane," the Court stated "I am construing the construction of backplane as a flat surface located on the backside of the device as the correct construction of the '235 Patent." (*Id.* at 5:11-14.)

### B. The Court's Summary Judgment Order

On November 12, 2014 the Court issued an order granting Source Vista's and LivingSocial's motions for summary judgment as to patent infringement finding that the asserted claims of the '235 Patent were invalid for indefiniteness under 35 U.S.C. § 112. (Dkt. No. 306 at 45–50.)

///

The Court began by noting the ordinary meaning of the claim term "back plane" is "a flat surface on the back side" of a device. (*Id.* at 47.) The Court also observed that the similar but distinct term "backplane" (one word) has a different meaning—a type of circuit board. (*Id.* at 47–48.) Treating these two distinct terms as the same, the Court found the ordinary meaning of the claim term "back plane" to be ambiguous. (*Id.* at 48.) "Therefore," the Court observed, "the Court must look to additional evidence of how the term would have been understood by one skilled in the relevant art in January 2009." (*Id.*)

The Court, however, did not consult the specification or the prosecution history of the '235 Patent to resolve the perceived ambiguity. Instead, it consulted only the prosecution history of the '351 application. (*Id.* at 49–50.) In that prosecution history, the Court found the electrical definition of "backplane" to be supported by a declaration of Dr. Nunally, and the mechanical definition of "back plane" to be supported by a declaration of Dr. Feland. (*Id.* at 49.) The Court then concluded that "one skilled in the relevant art could not reasonably be expected to determine how to choose between" these two declarations. (*Id.* at 50.) The Court then concluded that the claims of the '235 Patent are invalid. (*Id.*)

**C. Recent Notice of Allowance of '351 Application**

Two weeks after the October 24 hearing, on November 7, the PTO issued a Notice of Allowance for the '351 application. (Swaroop Decl., Ex. 1.) The Notice of Allowance states "the application identified above has been examined and is allowed for issuance of a patent." (*Id.*) The PTO thus has concluded that the claims of the '351 application meet all of the requirements of patentability, including the definiteness requirement. Significantly, Application Claim 21 (renumbered Claim 1), along with nine other independent claims in the '351application, include the term "back plane." (*Id.*, Ex. 2.)

/ / /

-4-

## III. LEGAL STANDARDS

### A. Reconsideration

"A motion for reconsideration is appropriate when the previous order under question is demonstrably wrong, or if new developments would affect the outcome of the motion." *Network Signatures, Inc. v. ABN-AMRO, Inc.*, No. SACV 06-629 JVS (RNBx), 2007 U.S. Dist. LEXIS 48332, *3 (C.D. Cal. Apr. 10, 2007). "As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (quoting *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981)) (emphasis omitted). The Ninth Circuit has explained that reconsideration is proper if, among other things, the Court "committed clear error or the initial decision was manifestly unjust." *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

Local Rule 7-18 adds further requirements:

> A motion for reconsideration of the decision on any motion may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision. No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion.

C.D. Cal. L.R. 7-18. mophie seeks reconsideration under Local Rule 7-18(a) and 7-18(b) due to the recent determination by the PTO that the claims of the '351 application are definite and allowable. mophie also seeks reconsideration under Local Rule 7-18(c) and this Court's inherent power to correct its

-5-

decisions, due to clear errors which caused the Court to overlook the specification and prosecution history of the '235 Patent.

**B.** **Indefiniteness**

"[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014) (citing 35 U.S.C. § 112, ¶ 2).

To invalidate a patent claim, Defendants bear "a heavy burden of persuasion" and must prove their defense by "clear and convincing evidence." *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2246 (2011). Similarly, factual findings subsidiary to the ultimate issue of definiteness must be proven by clear and convincing evidence. *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1338 (Fed. Cir. 2008).

> "[C]laims are not indefinite merely because they present a difficult task of claim construction." *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008). A claim is not indefinite "even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree." *Id.* (quoting *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001). "Proof of indefiniteness requires such an exacting standard because claim construction often poses a difficult task over which expert witnesses, trial courts, and even the judges of [the Federal Circuit] may disagree." *Id.* (internal quotation marks omitted).

*Transocean Offshore Deepwater Drilling v. Stena Drilling*, No. H-08-3287, 2014 U.S. Dist. LEXIS 152196, *96-97 (S.D. Tex. Oct. 27, 2014).

/ / /

# IV. ARGUMENT

## A. The PTO Recently Allowed The Claims Of The '351 Application, Thereby Finding The Claims To Be Definite

As noted above, the PTO has recently issued a Notice of Allowance for the '351 Application for claims that include the term "back plane." The emergence of this new material fact provides a compelling reason for the Court to reconsider its Order finding the '235 Patent invalid for indefiniteness.

Specifically, the record of the '351 application shows that both Dr. Nunally's and Dr. Feland's contradictory interpretations of back plane were provided to the PTO during the pendency of the '351 application. *See* Dkt. No. 157-3, Ex. C at 35–36; Dkt. No. 182, Ex. 37 at 5–7, Ex. 38. Significantly, instead of finding that these differing expert interpretations somehow render the claims indefinite, the PTO **allowed** claims with the term "back plane" after receiving both interpretations. By allowing the "back plane" claims, the PTO has necessarily found that these claims comply with the requirements for patentability, including the definiteness requirement. *See*, e.g., 37 C.F.R. § 1.311(a) ("If, on examination, it appears that the <u>applicant is entitled to a patent under the law</u>, a notice of allowance will be sent to the applicant . . . ") (emphasis added). As explained in the *Manual of Patent Examining Procedure* (MPEP), one "essential purpose of patent examination is to determine whether or not the claims are precise, clear, correct, and unambiguous." MPEP § 2171. "If the claims do not particularly point out and distinctly claim [the invention], the appropriate action by the examiner is to reject the claims." *Id*. Accordingly, this Court's ruling of indefiniteness contradicts the recent findings of the PTO, which has received the same evidence and reached a different conclusion.

/ / /

/ / /

/ / /

**B. The Court Clearly Erred And Failed To Consider Critical Facts In Its Analysis Of The Definiteness Issue**

    **1. The Prosecution History Of A Patent Or A Related Application Cannot Render The Claims Of The Patent Indefinite**

mophie respectfully submits that the Court did not recognize the very limited role of prosecution history in construing the claims of a patent or determining whether the claims are definite. The Court treated the prosecution history of a related patent application as its primary tool for construing the claims of the '235 Patent and determining whether they are definite. This was legal error.

The prosecution history is not afforded greater weight than the specification in claim construction, or in the related task of determining whether the claims are reasonably amenable to construction and therefore definite. In fact, the exact opposite is true. The specification, not the prosecution history, is of paramount importance. As the Federal Circuit has repeatedly explained, the specification "is the single best guide to the meaning of a disputed claim term." *Philips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc) (quoting *Vitronics Corp. v. Conceptronic*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). *See also Metabolite Labs v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1360 (Fed. Cir. 2004) ("In most cases, the best source for discerning the proper context of claim terms is the patent specification wherein the patent applicant describes the invention.").

"The importance of the specification in claim construction derives from its statutory role. The close kinship between the written description and the claims is enforced by the statutory requirement that the specification describe the claimed invention in 'full, clear, concise, and exact terms.' In light of the statutory directive that the inventor provide a "full" and "exact" description of the claimed invention, the specification necessarily informs the proper

construction of the claims." *Phillips*, 415 F.3d at 1316 (citations omitted). Indeed, the claims and the specification together constitute "a fully integrated written instrument" and are interpreted as such. *Id.* at 1315.

The prosecution history is very different. "[B]ecause the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* at 1317. Accordingly, the prosecution history has a more limited role than the specification. "The purpose of consulting the prosecution history in construing a claim is to exclude any interpretation that was disclaimed during prosecution." *Chimie v. PPG Indus.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005) (quoted in *Phillips*, 415 F.3d at 1317). Moreover, ambiguity or contradiction does not constitute a disclaimer. "Even if an isolated statement appears to disclaim subject matter, the prosecution history as a whole may demonstrate that the patentee committed no clear and unmistakable disclaimer." *Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335, 1342 (Fed. Cir. 2009).

Accordingly, when the prosecution history of a patent is ambiguous, it simply becomes a tool that is not particularly helpful to the Court in construing the claims. As the Federal Circuit explained in a closely analogous case:

> Two strong and contradictory interpretive strands thus run through the patent's prosecution history. … Each strand, considered alone, leads to a coherent and distinct meaning of the disputed claim. One does not prevail over the other, and together they are irreconcilable. **The prosecution in this case is thus unhelpful as an interpretive resource.**

*Athletic Alternatives v. Prince Mfg.*, 73 F.3d 1573, 1580 (Fed. Cir. 1996) (emphasis added). Notably, the court in *Athletic Alternatives* did not invalidate the claims as indefinite in light of the ambiguous prosecution history. It simply

-9-

rejected the prosecution history as a useful interpretive tool and turned to other tools to construe the claims.[1]

This same approach should be adopted here. In particular, the claims should be construed in light of the primary claim construction tool —the specification. The Court also could have relied upon the prosecution history of the '235 Patent itself. As mophie explains below, these two tools— which the Court did not mention in its Order—lead indisputably to only one conclusion. The term "back plane" was used in its ordinary mechanical sense to mean a planar surface at the back of the claimed device.

### 2. The Specification Of The '235 Patent Should Be Considered In Deciding Whether The Claims Are Sufficiently Definite

The Court's analysis of the meaning of the term "back plane" completely and improperly overlooks the '235 Patent specification. mophie's summary judgment briefs cited numerous examples from the specification of the '235 Patent showing that the specification clearly and repeatedly refers to the "back plane" (two words) in a mechanical sense as a flat surface located on the back side of the device; **not** a circuit board or a "a circuit board containing sockets into which other circuit boards can be plugged in." (*See* Dkt. No. 174 at 6–8; Dkt. No. 226 at 13–14.) For example, Fig. 3, reproduced and annotated below, clearly shows the back plane labelled (304) as a flat surface—***not a circuit board***:

/ / /

/ / /

---

[1] *See also Honeywell Int'l., Inc. v. Universal Avionics Systems Corp.,* 493 F.3d 1358, 1365 (Fed. Cir. 2007) (construing claims even though "[t]he passage in question [in the prosecution history] can be read either way"; *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1332 (Fed. Cir. 2004) (construing claims even though "statements in the prosecution history are subject to multiple reasonable interpretations".)

-10-



FIG. 3

(*See* '235 Patent at 4:39–45; *see also* 2:38–43; Fig. 2, 4:34–38.)

Further, the specification states that batteries, speakers, and microphones may be "housed within the thickness of a back plane." (*See id*. at 1:59–61; 2:38–41, 48–49, 52–54; 5:57–59; 9:19–21, 24–26; Dkt. No. 182, Ex. 32 at 177:7–178:5.) This again shows that the back plane must be the back surface of the device, not a circuit board, because one could not place batteries, speakers, and microphones within the thickness of a circuit board. (*See* Dkt. No. 174 at 8:13–17.)

In fact, the '235 Patent does not anywhere illustrate or describe "a circuit board containing sockets into which other circuit boards can be plugged in." The specification thus provides compelling evidence that the mechanical definition of "back plane" is the correct definition, and the electrical definition of "backplane" is not. If the electrical definition were adopted, the claims of the '235 Patent would not even cover the devices described in the patent. Such an odd construction "is rarely, if ever, correct." *Vitronics Corp. v. Conceptronic*, 90 F.3d at 1583  Thus, a person skilled in the art, reviewing the specification of the '235 Patent, would not be confronted with ambiguity as to the meaning of "back

-11-

plane." Instead, he or she would be compelled to adopt the ordinary mechanical definition.

### 3. The Prosecution History Of The '235 Patent Should Be Considered In Deciding Whether The Claims Are Sufficiently Definite

The Court's analysis of the meaning of the term "back plane" also completely and improperly overlooks the prosecution history of the '235 Patent itself. This prosecution history confirms that a "back plane" is a flat surface located on the back side of the device. mophie's summary judgment briefs cited numerous examples from the prosecution history establishing this. (Dkt. No. 174 at 9–10; Dkt. No. 226 at 14.) For example, the Court's Order ignores the fact the Examiner reviewing the '235 Patent understood that the back plane was a flat surface located on the back side of the device—*not a circuit board*. The Examiner found that an alleged anticipatory reference ("Diebel") disclosed a back plane, as shown below:



Figure 1B

-12-

(*See* Dkt. No. 157-2, Ex. B at 148–151; Dkt No. 182, Ex. 35 at 10:8–16 (circular notation added for emphasis).) Thus, the Examiner of the '235 Patent plainly understood that the term "back plane" referred to a back surface of a device, such as surface 164 shown above, and not to a circuit board.

### 4. **The Opinions Of Defendants' Own Expert Should Be Considered**

The Court also failed to consider relevant opinions from Defendants' own expert, Dr. Munson, that support mophie's construction of "back plane," and that offer further evidence that this claim term is definite.

For example, the Court's Order states that "Defendants' expert, Dr. Munson, states in his declaration that the term 'back plane' has the ordinary meaning of 'a circuit board containing sockets into which other circuit boards or components can be plugged in." (Dkt. No. 306 at 20:20–22.) But the Court failed to consider Dr. Munson's contradictory statement in his expert report, cited by mophie, admitting that "[t]he plain and ordinary meaning of 'back plane' is interpreted as the <u>back planar surface</u> related to the sidewalls <u>which create the cavity for holding the mobile device. The back plane is the surface in which the back portion of the mobile device rests against.</u>" (Dkt. No. 174 at 4–5 (quoting Dkt. No. 182, Ex. 34 at 19-20) (emphasis added to Ex. 34).)

Further, the Court ignored Dr. Munson's opinion, cited by mophie, that from his review of the specification, the "circuit board" meaning of back plane "**was not the definition intended by the inventor(s)**." (Dkt. No. 174 at 8:23–25 (emphasis added); Dkt. No. 226 at 19:15–21.)

Still further, the Court ignored Dr. Munson's opinion, cited by mophie, that the claimed invention would be **inoperable** and would "not make operational sense" if the "circuit board" definition were adopted. (Dkt. No. 174 at 6:1–16; Dkt. No. 226 at 19:21–20:3.) Dr. Munson's admission is material

/ / /

-13-

because a person skilled in the art would not construe "back plane" to lead to such a nonsensical result. (*Id.*)

The Court's failure to properly consider this evidence led it to the erroneous conclusion that the construction proffered by the Defendants is a reasonable one—it is not. With only one reasonable construction before it, the Court should not have found the claims to be indefinite.

### C. The Court's Order Concluding That The Dictionary Definitions Are Ambiguous As To The Ordinary and Customary Meaning of "Back Plane" (Two Words) Is Also Clearly Erroneous

The Court's Order incorrectly states that "the *dictionary definitions* of the words do not provide a single unambiguous ordinary and customary meaning of the term 'back plane'" and "[t]he problem is that both sides' respective 'ordinary meaning' definitions' of 'back plane' *find support in the dictionaries*". (Dkt. No. 306 at 48:1–3, 17–18 (emphasis added).) The Court, however, identified only *one* dictionary definition for the term "back plane" (two words). (*Id.* at 47:19–25 ("back" meaning "the side or surface of something that is opposite the front or face: the rear side or surface of something" and "plane" (noun) meaning "a flat or level surface").) That definition is unambiguous, is consistent with mophie's proposed construction, and is consistent with the intrinsic evidence. The other definition cited by the Court is for a *different* word: "backplane" (one word). Thus, contrary to the Court's statement, there is only *one dictionary definition* for "back plane" (two words), and therefore the dictionaries presents no ambiguity as to the ordinary and customary meaning of this term.

### V. CONCLUSION

For all the above reasons, mophie respectfully requests that the Court grant mophie's Motion for Reconsideration of the Court's Summary Judgment Order (Dkt. No. 306). In so doing, mophie requests that the Court (1) hold that

-14-

mophie's proposed construction of the term "back plane" to mean "a flat surface located on the back side of the device" is correct; (2) reverse its finding that the '235 Patent is invalid for indefiniteness under 35 U.S.C. § 112; and (3) grant mophie's motion for summary judgment of infringement of the '235 Patent against Defendants Dharmesh Shah and Serve Global.[2]

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: November 19, 2014   By: /s/ *Sheila N. Swaroop*
  Steven J. Nataupsky
  Paul A. Stewart
  Sheila N. Swaroop
  Marko R. Zoretic
  Nicole Rossi Townes

  Attorneys for Plaintiff
  MOPHIE, INC.

19328703

---

[2] Whether judgment should also be entered against Defendant LivingSocial would depend upon the Court's view of whether LivingSocial has "sold" or "offered to sell" the accused products.

-15-